UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LEROY JOHNSON | * | CIVIL ACTION NO. 06-0914 |
| | * | |
| VERSUS | * | SECTION "R" |
| | * | |
| CENAC TOWING, INC. AND | * | MAGISTRATE (2) |
| XYZ INSURANCE COMPANY | * | |
| | * | JUDGE VANCE |

************************************************

## PRE-TRIAL MEMORANDUM

**MAY IT PLEASE THE COURT:**

Defendants Cenac Towing, Inc. respectfully submits the following P*re-Trial Memorandum*.

This is a Jones Act and general maritime law claim brought by Plaintiff, Leroy Johnson, against his employer, Defendant, Cenac Towing, Inc. ("Cenac"). Plaintiff was assigned as a tankerman on Cenac's vessel, the M/V URSULA CENAC, on December 14, 2005, when he was allegedly injured moving a crossover hose.

## FACTS

On December 14, 2005, Leroy Johnson was employed by Cenac towing as a licensed tankerman and seaman and member of the crew of the M/V URSULA CENAC, a tugboat. The crew working with Mr. Johnson consisted of

Captain John Theriot, Wheelman Kelly Sauerwin, Tankerman Louis Celestine, and Deckhand/Tankerman Trainee Kevin Ahysen.  On the day of the alleged incident, the M/V URSULA CENAC and its barges were standing by for dock space at a fleet located in Mobile, Alabama.   During the wait, Mr. Celestine, Mr. Johnson and Mr. Ahysen had been instructed to chip and paint.  Without being asked to do so, Mr. Johnson decided that he would have the deck crew move and connect the crossover hose that connects the manifolds of the two barges.  In order to move the hose from its storage location, Johnson and Mr. Celestine lifted the hose as Mr. Ahysen positioned himself near the barge manifold (fixed pipeline) to connect the crossover hose once it was moved into position.  As Mr. Celestine and plaintiff moved the crossover hose, Mr. Celestine stumbled allowing the hose to fall on him.  As Mr. Ahysen assisted Mr. Celestine in lifting the hose off of Mr. Celestine's body, Johnson held onto the hose, allegedly over his shoulder.  Mr. Johnson claims that as soon as the accident happened, he told the other members of the crew that his back was burning and that he had wet himself.  The work stopped and Mr. Johnson claims that he was assisted across the barge and aboard the URSULA CENAC.  However, neither Mr. Celestine nor Mr. Ahysen remember seeing Mr. Johnson urinate on himself and they both testified that Johnson went to the boat by himself and they followed approximately thirty minutes later.

**LAW AND ANALYSIS**

1. **JONES ACT**

Under the general maritime law, a seaman generally has no right to sue his employer for the negligence of the employer or the seaman's fellow employees. *See, Chandris, Inc. v. Latsis,* 515 U.S. 347, 1996 A.M.C. 1840 (1995); *Ivy v. Security Barge Lines, Inc.,* 606 F.2d 524 (5th Cir. 1979). Traditionally, a seaman was limited to causes of action for maintenance and cure and damages for unseaworthiness. *The OSCEOLA*, 189 U.S. 158 (1903). Until the passage of the Jones Act, *46 U.S.C.A. §688*, a seaman had no claim for mere negligence attributed to his employer or fellow employees. *See, Ivy v. Security Barge Lines, Inc.,* 585 F.2d 723 (5th Cir. 1978).

An employer is vested with a fundamental duty to provide its seamen with a reasonably safe work place. *See, Ober v. Penrod Drilling Co,* 694 F.2d 68 (5th Cir. 1982), modified on other grounds, 726 F.2d 1035 (1984). However, unlike the duty owed to seamen for the claim of unseaworthiness, the duty to provide a safe work place is not absolute, but only requires reasonable care under the circumstances. *See, Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331, 335-36 (5th Cir. 1997). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely the duty to take reasonable care under the circumstances. *Id.* Furthermore, the *Gautreaux* court held that the seaman himself is obligated to act with ordinary prudence, effectively holding the seaman to a higher duty of care than was previously required. *Id.* at 339. To hold otherwise, explained the court, would "unjustly reward unreasonable conduct and

would fault seamen only for their gross negligence, which was not the contemplation of Congress." *Id.* Additionally, foreseeability of harm is still a pertinent test in negligence cases under the *Jones Act. In re Cooper/.T Smith* 929 F.2d 1073, 1077 (5th Cir. 1991). *Trahan v. Superior Oil Co., 204 F.Supp 627, 632* (W.D.La. 1962); *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir.1980).*Gwinett v. Albatross S.S. Co.*, 243 F.2d 8, 9 (2d Cir. 1957), *cert. denied*, *Gwinett v. Astra S.S. Corp.*, 355 U.S. 828, 78 S. Ct. 40, 2 L. Ed. 2d 41.

     The evidence establishes that the Plaintiff will clearly not be able to carry his burden of proof on his claim for Jones Act negligence.  It is undisputed that Cenac provided Mr. Johnson with at safe place to work and Mr. Johnson has already stated that there was nothing wrong with the barge, its equipment, the hose or anything else that caused his accident.  Moreover, when filling out his accident report, Mr. Johnson specified that nothing could have been done to prevent the accident.  Consequently, this is a classic no fault accident, as the plaintiff can not demonstrate any forseeability of harm under the present scenario.  The causative factor of Mr. Johnson' accident was the unnecessary and improper lifting of the crossover hose coupled with the stumbling of Mr. Celestine.  There was no way for the defendant to anticipate that Mr. Celestine would stumble while moving the hose.  Mr. Johnson admits as much, in that he described the incident as unavoidable in his own accident report.

     Under the Jones Act and the general maritime law, the mere occurrence of an accident does not give rise to liability. *Marvin v. Central Gulf Lines, Inc.*, 554 F.2d 1295, 1299 (5th Cir.1997), cert. den., 434 U.S. 1035(1978); *Gottshall v.*

4

*Consolidated Rail Corp.*, 512 U.S. 532, 544 (1944); *Chisholm v. Sabine Towing & Transportation Co.*, 679 F.2d 60, 62 (5th Cir.1982)  A Jones Act employer is not the insurer of a seaman's safety. *Id.*  Instead, the seaman must demonstrate that his employer failed to exercise ordinary prudence under the circumstances. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir.1997)(en banc)  The seaman likewise must exercise ordinary prudence under the circumstances. *Id.*  An employer is not liable when an injury arises solely from the ordinary and normal activities or risks of seamen's work absent proof that the injury was caused by the employer's negligence. *Chisholm v. Sabine Towing & Transportation Co.*, 679 F.2d at 62; *Massey v. Williams-McWilliams, Inc.*, 414 F.2d 675, 678 (5th Cir.1969), cert. den., 396 U.S. 1037 (1970).  An employer is not required to protect its employees from all types of injuries. *Gavagan v. United States*, 955 F.2d 1016, 1019-21 (5th Cir.1992).

Therefore, to find Jones Act negligence, the Court must find both that an unsafe condition existed and that the employer had notice and the opportunity to correct it. *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir.1989); *Rice v. Atlantic Gulf & Pacific Co.*, 484 F.2d 1318, 1320 (2d Cir.1973).  In this instance, there were no unsafe conditions on the M/V URSULA CENAC or the barges CTCO 3019 and 3021.  As stated before, Mr. Johnson admits that there was nothing that could have been done to prevent this accident; in essence this is an unavoidable accident.  However, if there can be anything said to be unsafe it would be the actions of Mr. Johnson who directed the barge crew to move the

5

crossover hose unnecessarily[1] and who claims to have improperly lifted the crossover hose to shoulder level.

## 2. **SEAWORTHINESS**

With respect to the unseaworthiness claim, it is well-settled that a maritime employer is not required to provide an accident-proof ship, nor is he an insurer of a seaman's safety. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S. Ct. 926, 933, 4 L. Ed. 2d 941 (1960). A shipowner need only furnish a vessel and its appurtenances that are reasonably fit for their intended use and a crew that is reasonably adequate for their assigned tasks. *Gutierrez v. Waterman S.S. Co.*, 373 U.S. 206 (1963). A shipowner has a non-delegable duty to furnish a vessel reasonably fit for its intended use to those who work aboard the vessel. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. at 550, 80 S. Ct. at 933; *Meyers v. M/V EUGENIO C*, 842 F.2d 815, 817 (5th Cir. 1988); *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1432-33 (5th Cir. 1988); *Hamilton v. Seariver Maritime, Inc.*, Civ. A. No. 94-1263, 1995 WL 133335 at *4 (E.D. La. March 23, 1995); *Kiger v. Doucet & Adams, Inc.*, Civ. A. No. 96-1915, 1998 WL 249221 at *5 (E.D. La. May 15, 1998); *Perkins v. Wood Towing Co.*, Civ. A. No. 97-3664, 1999 WL 777734 at *3 (E.D. La. Sept. 29, 1999).

It is undisputed that the M/V URSULA CENAC was a seaworthy vessel at the time of Mr. Johnson's accident on December 14, 2005. The evidence establishes that the barge was properly equipped and there existed no hazards

---

[1] The crew, under the direction of Mr. Johnson, was connecting the crossover hose while the barges were on standby at a near by dock. Therefore, the tug and barges were going to need to be transported to the fuel dock when there was available dock space. It is against Coast Guard regulations to move barges while a transfer, or crossover, hose is connected. Consequently, the crossover hose was going to be disconnected and re-connected after when the barges were moved to the fuel dock..

on the M/V URSULA CENAC or the barges CTCO 3019 and 3021.  Mr. Johnson himself has testified that there was nothing wrong with the hose, the barges, or the M/V URSULA CENAC at the time of his alleged accident.  Moreover, Mr. Johnson has affirmatively testified that there was nothing slippery on the boat.  Thus, the M/V URSULA CENAC and all of its appurtenances were reasonably fit for their intended use and there exists no valid claim for unseaworthiness.  Additionally, there is no evidence that the M/V URSULA CENAC was undermanned, as Mr. Johnson himself testified that moving the crossover hose was a two man job and there were three people involved.

### 3. **WILLFUL CONCEALMENT OF PRIOR MEDICAL HISTORY**

Plaintiff Leroy Johnson was hired by Cenac Towing Company on two occasions.  On each occasion Mr. Johnson willfully concealed material facts about his medical condition in his employment application and pre-employment physical.  Specifically, on both occasions Mr. Johnson lied on his Employment Application form in responding to the sections that asked "Do you have any physical or mental condition(s) which may interfere with or hinder the performance of the job for which you wish to be considered? If so, please explain:" instead of revealing his prior injuries Mr. Johnson wrote "No."  *Id.*  Additionally, the very next question asked **"Have you ever had an on the job injury?"** to which Mr. Johnson checked "**No.**"  *Id.*  As a follow up to the question about on the job injuries the application states "If answer is yes to preceeding [sic] question, complete below:" and the application gives spaces for "Approximate Date of Injury", "Employer at Time of Injury", "Nature of Injury",

'Were You Disabled", "Approximate Length of Time You Were Off Work", and "Was a Claim for Benefits Made?" *Id.* To all these questions Mr. Johnson wrote "N/A". *Id.*

Mr. Johnson's willful concealment of his prior injuries results in a forfeiture of his maintenance and cure according to the rule of *McCorpen v. Central Gulf Steamship Corporation* and makes him contributorily negligent for any injury that he may have sustained under *Curry v. United States*. *McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547, 559 (5th Cir. 1968), *cert. denied*, 393 U.S. 894 and *Curry v. United States,* 327 F.Supp. 155, 165-66 (N.D.Cal. 1971).

According to the rule of *McCorpen*, *when* a shipowner requires a seaman to submit to a pre-hiring medical examination or interview, and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then the seaman is not entitled to an award of maintenance and cure. *In re Falcon Workover Company, Inc.*, No. CIV. A. 98-0005, CIV. A. 98-1443, 1999 WL 243657 at *3 (E.D. La. April 21, 1999); *McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547, 559 (5th Cir. 1968), *cert. denied*, 393 U.S. 894. Accordingly, Mr. Johnson was under a duty to reveal his prior cervical injuries, low back pain, and prior on the job injuries. *Guillory v. Northbank Towing Corp.*, Civ. A. No. 92-0140, 1993 WL 721991 at *2 (W.D. La. June 25, 1993). Mr. Johnson willfully concealed all his prior injuries, in both the employment application and the pre-employment medical exam, despite being specifically asked on both occasions.

8

In order to establish the denial of maintenance and cure benefits on the grounds of willful concealment, the employer must prove:

  (a) Concealment of medical facts;

  (b) Materiality to decision to hire; and

  (c) Causal link between the concealed information and the injury complaint.

*Russell*, 2000 WL 1514712 at *2; *Bud's Boat Rental, Inc.*, 1992 WL 211453 at *1; *Guillory*, 1993 WL 721991 at *1. It is undisputable that Mr. Johnson has willfully concealed his extensive prior medical history. Dr. Walker, the doctor who performed Mr. Johnson's pre-employment physical, has unequivocally stated that Mr. Johnson would not have been hired if he had revealed his prior back pain or his prior neck surgery. The causal link between the concealed information and the injury complaint is satisfied in this matter by virtue of the fact that had Mr. Johnson revealed his prior medical history, Defendant Cenac Towing, Inc. would never have hired him, much less assigned him to do any heavy labor. Consequently, the only reason Mr. Johnson was aboard the M/V URSULA CENAC on December 14, 2005 was because he lied on his employment application and concealed his physical duty restrictions from Dr. Walker in his pre-employment medical exam. Therefore, under the plain application of the *McCorpen* rule Mr. Johnson is not entitled to maintenance and cure for his alleged injury of December 14, 2005.

In addition to precluding any award of maintenance and cure, Mr. Johnson's willful concealment of his prior medical history results in finding of contributory negligence. *Curry v. United States,* 327 F.Supp. 155, 165-66

9

(N.D.Cal. 1971).  In *Curry* the Court was confronted with a situation where a seaman failed to reveal his prior history of asthma and became ill and died in the service of the vessel.  The seaman's family sued for negligence and unseaworthiness of the vessel, alleging that the vessel's engineroom, where the seaman worked, was abnormally polluted and that the vessel did not have adequate and competent personnel to assist the seaman in his duties.  *Id at 160.*  However, the defendants alleged that the seaman was contibutorily negligent in failing to provide an accurate history of his asthma in his presign-on physical examination.  The Court reasoned that although the seaman's asthma had not been disabling for 15 years prior to his employment with the defendant, the fact that the defendant inquired about the condition and it was met with a negative reply from the seaman equated to a breach of his duty to disclose as established under the *Burkert*[2] case.  The Court went on to find that a casual link between such failure and the harm; reasoning that had the seaman revealed his condition the defendant could have made provisions to protect itself by assigning the seaman to different duties or by not hiring him at all.  Therefore, the Court found that the seaman's failure to reveal his prior medical condition was contributory negligence.  *Id* at 168*.*

The same analysis can be applied in the present case; Mr. Johnson was specifically asked about his prior medical history in his employment application and in his pre-employment physical.  On both occasions he willfully concealed his prior medical history so that he could get employment with Cenac Towing,

---

[2] Under the reasoning in *Burkert*, the proper standard to be applied in cases such as this is whether the seaman, in good faith believed himself fit for duty when he signed aboard for duty.  *Burkert v. Weyerhauser Steamship Company,* 350 F.2d 826, 831 (9th Cir. 1965).

10

Inc.  Had Mr. Johnson revealed his prior medical history in his pre-employment physical he would have failed his physical and not been recommended for hire.  One of the reasons that Mr. Johnson would not have been hired is to prevent "the possibility of further endangering himself in any kind of way, to worsen or to have progression of his spinal disease or whatever defect may be in whatever circumstance we're talking about, in this case his neck and his back..."  *Trial Testimony of Dr. Walker at 29:21-30:17.*  Following the reasoning established in *Curry*; Mr. Johnson was under a duty to reveal his prior medical history, he breached that duty, and his breach was a proximate cause of any injury that he may have sustained on the vessel.  In short, **but for** his willful concealment of his injury he would not have been working on the M/V URSULA CENAC and therefore he would not have been injured on December 14, 2005.

### 4. PLAINTIFF'S INJURIES WERE PRE-EXISTING CONDITIONS

Mr. Johnson first injured his cervical spine in an electrocution incident while working for Sonat Offshore in 1994.  After the accident Mr. Johnson complained of right arm pain, lumbosacral pain, and cervical pain and sought treatment with Dr. Vogel.  Dr. Vogel diagnosed him with a chronic lumbar strain and a herniated cervical disc at C3-C4 to the right and a defect at C4-C5 to the left.  As a result of the injury, Dr. Vogel performed an anterior cervical fusion at C3-C4 on Mr. Johnson on July 26, 1995.

Mr. Johnson was later involved in a second job related injury on February 8, 2001 while employed with Adams Land & Marine, Ltd. as a tankerman.  This time Mr. Johnson reported that he sustained injuries to his back, hip and leg.

After his accident, he began seeing Dr. Phillips for his injuries. On March 8, 2001 Dr. Phillips wrote a report letter to attorney H. Edward Sherman stating that Mr. Johnson was found to have "low back pain which is constant, moderate to severe and radiates into the left hip and thigh aching in character." Dr. Phillips also noted that Mr. Johnson "states that before the accident he had no bladder problems and completely normal erectile function. However, since the accident he has had changes noted. Therefore a urological consultation is necessary for this patient." *Id.* Mr. Johnson also experienced chronic low back pain and was diagnosed with a central bulging disc at L5-S1 on June 27, 2001. In summation, as a result of the 2001 injury Mr. Johnson experienced low back pain, was diagnosed with a central bulging disc at L5-S1, had urinary problems and erectile problems.

In his alleged accident with Cenac Towing, Inc. on December 14, 2005 he initially complained of low back pain and urinary incontinence. However, when describing the incontinence to Dr. Dantin the day after the accident, Mr. Johnson stated that the incontinence was not a total loss of all bladder control, rather three specific instances of incontinence and he was still able to have control over his bladder otherwise. His initial complaints of low back pain and urinary problems relate back to his 2001 accident and his treatment by Dr. Phillips. Additionally, his subsequent cervical injury was a degenerative condition at C4-C5 that was first identified in 1995 by Dr. Vogel and continued to worsen over the next ten (10) years after the added stress was exerted at the C4-C5 level by the C3-C4 fusion. Dr. Ioppolo testifies that, to a degree of medical certainty, it is

more likely than not that Mr. Johnson's cervical injury, if tied to the myelopathic symptoms of urinary problems and erectile dysfunction, first presented after the 2001 injury. Otherwise, Dr. Ioppolo relates the surgery to the February 6, 2006 car accident when Mr. Johnson first experienced pain in the neck area.

Cenac acknowledges that a when a defendant's wrongful act causes an injury, the defendant is fully liable for the resulting damage even though the injured plaintiff had a pre-existing condition that made the consequences of the wrongful act more severe than they would have been for a normal victim. *Maurer v. United States*, 668 F.2d 98, 99-100 (2d Cir.1981). However, there are two exceptions to this rule. *Id.* at 100. First, if a plaintiff is disabled prior to an accident, a defendant is liable only for the additional harm or aggravation that he has caused. *Id*. Second, when a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect that proportion of damages that would have been suffered even in the absence of the subsequent injury, but the burden of proof in such cases is upon the defendant to prove the extent of the damages that the preexisting condition could evitably have caused. *Id.*

Examining these two exceptions, it is obvious that Cenac is not liable for any of Mr. Johnson's alleged injuries. Applying the first exception, Mr. Johnson was already disabled from his prior C3-C4 fusion and from his prior low back injury in 1994 and 2001. According to the testimony of Dr. Ioppolo and the vocational rehabilitation counselors, Mr. Johnson was already disabled from doing heavy labor. Accordingly, Cenac cannot be held liable for any restriction

that will be placed on Mr. Johnson to restrict him from heavy labor as he was already restricted prior to the alleged December 14, 2005 incident.

Examining the second exception it will be undisputed that Mr. Johnson would inevitably have needed another fusion at C4-C5 because of the added stress exerted on C4-C5 by his prior C3-C4 fusion and because of the defect that was already present in 1995.  It is an accepted principle in neurosurgery that when a patient has a fusion, there is increased pressure and stress on the adjacent levels, specifically the lower level, because of the fusion.  Therefore, considering that Mr. Johnson already had a defect at the level below the C3-C4 fusion in 1995, it was inevitable that the degeneration of C4-C5 would have been accelerated and a C4-C5 fusion was inevitable.  Dr. Bartholomew actually fused Mr. Johnson at C5-C6 for this very reason.  Despite no real impingement at C5-C6 Dr. Bartholomew knew that C5-C6 would become problematic in the future and fused that level at the same time he did Mr. Johnson's C4-C5 level. Accordingly, Cenac cannot be held liable to the plaintiff for his preexisting cervical condition that would inevitably worsen, and Cenac is entitled to have the plaintiff's damages discounted to reflect that proportion of damages that would have been suffered even in the absence of the subsequent injury.  *Id*.

**5. CREDIBILITY OF WITNESSES:**

When the testimony of a witness is not believed, the trier of fact may simply disregard it in whole or in part. *Bose Corp. v. Consumers Union of U.S.*, Inc., 466 U.S. 485, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984)., *Carlisle v. M/S SISTINA*, 407 F.2d 824, 826 (5th Cir.1969); *Knox v. Blackburn*, 688 F.Supp. 231,

233 (M.D.La.,1988). A jury or judge may choose to believe part of the testimony of a witness while rejecting other testimony of the same witness. *Knox at 233* citing *United States v. Merida*, 765 F.2d 1205, 1220 (5th Cir.1985) rehg. denied en banc 770 F.2d 164 (1985), *State v. Converse*, 515 So.2d 601 (La.App. 1st Cir.1987). The trier of fact may also choose to accept or reject the testimony of a witness in whole or in part even if those witnesses testify for the same party and their testimony may conflict. See *United States v. Hinds*, 662 F.2d 362, 367, n. 9 (5th Cir.1981), cert. denied 455 U.S. 1022, 102 S.Ct. 1720, 72 L.Ed.2d 140 (1982).

      The Court will undoubtedly be called upon to make a determination on the credibility of Mr. Johnson. Mr. Johnson has consistently lied about his prior medical history, his employment, his symptoms, and the facts and circumstances surrounding the alleged December 14, 2005 accident. After the Court has heard the testimony of the witnesses and seen the evidence there **will** be inconsistencies and contradictions. Therefore, it will be necessary for the Court to make a determination on the credibility of certain witnesses. Cenac contends that the Court should wholly discredit and reject the testimony of Mr. Johnson because his testimony is not reliable due the sheer volume of misrepresentations, inaccuracies and lies attributable to Mr. Johnson. *Bose Corp. v. Consumers Union of U.S.*, Inc., 466 U.S. 485, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984). When faced with this situation "[t]he trier of fact shall evaluate credibility and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness." *State v. Silman*, 663

So.2d 27, 35 (La.11/27/95) see also *Hayes v. Attorney General State of Louisiana,* 1995 WL 321766 at *2, (E.D.La. 1995) citing *State v. Richardson*, 459 So.2d 31 (La.App. 1st Cir.1984).  At trial, Cenac intends on highlighting Mr. Johnson's inaccuracies, misrepresentations, and lies about his prior medical history, his employment, his symptoms, and the facts and circumstances surrounding the alleged December 14, 2005 accident.  Accordingly, Cenac contends that Mr. Johnson's testimony is not credible and should be wholly rejected.

When the Court makes credibility determinations of a witness the findings cannot be clearly erroneous; "[i]f the factual determinations are based on determinations of the witnesses' credibility, or on reasonable interpretation or inferences from the testimony or other evidence, the district court's findings cannot be clearly erroneous." *Heath v. Brown*, 858 F.2d 1092, 1094 (5th Cir. 1988) citing *Campos v. City of Baytown*, 840 F.2d 1240, 1243-44 (5th Cir.1988)(internal citations omitted).  The Fifth Circuit has expanded on its deference to the determinations of credibility by the trier-of-fact holding "[w]hen reviewing findings of fact we are mindful of the trial judge's privilege of accepting all, part, or none of any witness's testimony. When findings are based on credibility evaluations the deference paid to decisions by the trier-of-fact is enhanced." *Heath v. Brown*, 858 F.2d 1092, 1094 (5th Cir.  1988)

## CONCLUSION

For the reasons discussed above, Mr. Johnson will be unable to prove Jones Act negligence against Cenac, as the injury was not foreseeable and no

16

unsafe conditions existed on the M/V URSULA CENAC or the barges CTCO 3019 and 3021.  Plaintiff Leroy Johnson is also not entitled to any maintenance and cure according to the clear rule of law established in *McCorpen*.  The M/V URSULA CENAC and the barges CTCO 3019 and 3021 were not unseaworthy.  Finally, all of Mr. Johnson's testimony should be rejected by the court for his copious amounts of inconsistencies.

Should the Court find any negligence on the part of Cenac, Plaintiff should be held contributorily negligent for his willful concealment of his medical history and for his unnecessary movement of the crossover hose and his improper lifting of the hose.  Additionally, Cenac should not be held liable for any of Plaintiff's pre-existing injuries, all for the reasons more fully discussed above.

Based upon the foregoing, Cenac respectfully submits that it has no liability to Plaintiff; and his claims should be dismissed with prejudice.

Respectfully submitted, this 27th day of November, 2006.

**EMMETT, COBB, WAITS & HENNING**

   s/Jason R. Kenney
**RANDOLPH J. WAITS  (13157) T.A.**
**MATTHEW F. POPP  (24608)**
**JASON R. KENNEY (29933)**
1515 Poydras Street, Suite 1950
New Orleans, Louisiana  70112
Telephone:  (504) 581-1301
Facsimile:  (504) 581-6020
Email:  ecwko@ecwko.com
Attorneys for CENAC TOWING CO., INC

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice through the CM/ECF system on this 27th day of November, 2006.

    s/Jason R. Kenney        
**JASON R. KENNEY**
